# FOR PUBLICATION



**FILED**

Nov 03 2014, 10:14 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GREGORY L. FUMAROLO**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINE REDELMAN**
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF )
THE PARENT-CHILD RELATIONSHIP OF )
D.B.M. (Minor Child) and )
                                   )
H.B. (Father), )
                                   )
    Appellant-Respondent, )
                                   )
        vs. )   No. 02A03-1405-JT-171
                                   )
INDIANA DEPARTMENT OF CHILD )
SERVICES, )
                                   )
    Appellee-Petitioner. )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
The Honorable Lori K. Morgan, Magistrate
Cause No. 02D08-1309-JT-103

**November 3, 2014**

**OPINION – FOR PUBLICATION**

**VAIDIK, Chief Judge**

## Case Summary

H.B.'s ("Father") rights to his son D.B.M. were terminated earlier this year. He now appeals, arguing that the testimony of an Allen County Department of Child Services ("ACDCS") supervisor should not have been admitted at the termination hearing. He contends that without this testimony, there is insufficient evidence to support the trial court's order terminating his parental rights. We conclude that any error in admitting this evidence was harmless, and even setting this evidence aside, there is sufficient evidence to support the termination order. We affirm.

## Facts and Procedural History

D.M. ("Mother") gave birth to D.B.M. in July 2003.[1] ACDCS removed D.B.M. from Mother's care in January 2012, and D.B.M. was adjudicated a child in need of services ("CHINS") the following month. The trial court's CHINS order detailed the reasons for D.B.M.'s removal and CHINS status, including:

- Mother's previous involvement with DCS
- Mother's personality and intellectual disorders
- Mother's recent hospitalization for mental-health concerns
- D.B.M.'s frequent hospitalizations, which were based on Mother's unsubstantiated claims that someone was poisoning D.B.M.
- The use of Mother's home, where D.B.M. was living, for drug trafficking

Pet'rs Ex. 1. Father and Mother were not living together when D.B.M. was adjudicated a CHINS, and Father and D.B.M. had little to no contact with each other.

---

[1] Mother voluntarily relinquished her parental rights, and she does not participate in this appeal.

To facilitate reunification, the trial court ordered both parents to do a number of things, including refrain from criminal activity, maintain appropriate housing, cooperate and communicate with caseworkers, obtain a family-functioning assessment, and participate in services recommended by the family-functioning assessment. Father was also ordered to establish paternity.

Father failed to fully comply with the trial court's order, and in September 2013 ACDCS filed a petition to terminate his parental rights. The trial court held a hearing on the petition in March 2014. Father did not attend.

At the hearing, ACDCS supervisor Heather Rouns testified that although Father maintained contact with ACDCS for a time after the CHINS adjudication, he eventually stopped communicating with ACDCS altogether. Tr. p. 24. As a result, "from reviewing the file," Supervisor Rouns reported that ACDCS "has not had a valid address for him[] on a multitude of occasions . . . ." *Id.* at 25. She also testified that Father failed to notify ACDCS of any housing or employment changes. *Id.* at 26. At this point, Father's counsel objected, saying that Supervisor Rouns lacked "firsthand knowledge as to these matters and is in effect trying to bootstrap what would be the anticipated testimony of the family case manager, who is not with us . . . ." *Id.* Counsel was referring to family case manager Marquitta Byers ("FCM Byers"), who was on maternity leave.

Counsel for ACDCS established, through additional questioning, that Supervisor Rouns had personal knowledge of the case. *See id.* at 27-36. Father's counsel then clarified that his objection was actually that Supervisor Rouns' testimony was hearsay. *Id.* at 36. In response, ACDCS's counsel argued that DCS employees routinely rely on

3

hearsay when monitoring parents, such as "service-provider reports, letters, all of that information, [and] that's all hearsay. It's acceptable hearsay because it's part of their job." *Id.* at 37. The trial court overruled Father's objection. *Id.* at 38. Supervisor Rouns went on to testify that Father had failed to comply with the trial court's order to participate in services recommended by the family-functioning assessment and had not exercised any parenting time with D.B.M. throughout the case. *Id.* at 39-55. She also testified that D.B.M. was thriving in his foster-care placement. *Id.* at 46-48.

Family case manager Brianna Norris ("FCM Norris"), who replaced FCM Byers, also testified that Father had not complied with the trial court's order: "he [did] not complete[] recommended services and [did] not visit[] with D.B.M." *Id.* at 55. FCM Norris likewise told the court that D.B.M. was flourishing in his current foster-care placement. *Id.* at 54. Beth Webber, the guardian ad litem ("GAL") assigned to the case, summarized Father's lack of involvement in the case and D.B.M.'s life:

> [D.B.M.] hasn't had contact with [Father]. [F]ather came to a couple of the first court hearings, but [he] hasn't been involved for the pendency of this case. He[] initially had some telephone contact, but has basically fallen off the face of the earth and we haven't always known where he has been. He hasn't shown interest by visiting. He hasn't shown interest by maintaining contact with [ACDCS] or trying to maintain contact with the family that has [D.B.M.] and he doesn't even come to regularly scheduled court hearings.
>
> *       *       *       *       *
>
> [Father and D.B.M] didn't have much of a relationship prior to [ACDCS] getting involved a couple of years ago. They had been estranged at that time, so it would take some work to even try to make reunification occur. And in this instance, [Father] hasn't tried. He did the family-functioning assessment and then never followed through with any of the recommendations [from] that, so we can't even look at him as a potential for anything because we don't even know what his situation is and he hasn't even visited with [D.B.M.]. [D.B.M.] is doing remarkably well under

4

the circumstances. And with no contact with [Father], it doesn't leave us with many options, and so this child needs permanency. Twenty-six months in the care of [ACDCS] is way too long . . . .

*Id.* at 61-62. GAL Webber recommended terminating Father's rights. *Id.* at 62-63.

The trial court took the matter under advisement, and in April 2014 it entered an order terminating Father's parental rights.

Father now appeals.

## Discussion and Decision

Father contends that Supervisor Rouns' testimony was inadmissible hearsay. He argues that the trial court should not have allowed her testimony, and without it, there is insufficient evidence to support the trial court's order terminating his parental rights.

"The admission of evidence is entrusted to the sound discretion of the trial court." *In re A.J.*, 877 N.E.2d 805, 813 (Ind. Ct. App. 2007), *trans. denied*. An abuse of discretion only occurs where the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.* "The fact that evidence was erroneously admitted does not automatically require reversal, and we will reverse only if we conclude the admission affected a party's substantial rights." *Id.* "In general, the admission of evidence that is merely cumulative of other evidence amounts to harmless error as such admission does not affect a party's substantial rights." *In re Paternity of H.R.M.*, 864 N.E.2d 442, 450-51 (Ind. Ct. App. 2007).

Over Father's objection, Supervisor Rouns was permitted to testify about Father's lack of progress during the time FCM Byers was assigned to Father's case. The implication from her testimony and counsel's colloquy with the trial court is that

5

Supervisor Rouns based her testimony on documents prepared by FCM Byers and others. On appeal, Father argues that this constituted inadmissible hearsay and "no exception to the rule excluding hearsay was presented." Appellant's Br. p. 7. It is undisputed that Supervisor Rouns' testimony was admitted to prove the truth of the matter asserted, and her testimony therefore constitutes hearsay, *see* Ind. Evidence Rule 801(c), which generally is not admissible unless an exception applies, *see* Ind. Evidence Rule 802.

To the extent Supervisor Rouns' testimony was based on records in ACDCS's possession, it would likely be admissible pursuant to the hearsay exceptions for public or business records. *See* Ind. Evidence Rule 803(6), (8). The business-records exception states that the following is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

> **(6) Records of a Regularly Conducted Activity.** A record of an act, event, condition, opinion, or diagnosis if:
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(9) or (10) or with a statute permitting certification; and
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Evid. R. 803(6). "[T]he rule unequivocally requires the proponent of business records to establish, by the testimony of the custodian or other qualified witness, that the records are regularly made." *J.L. v. State*, 789 N.E.2d 961, 965 (Ind. Ct. App. 2003) (citing *Ground v. State*, 702 N.E.2d 728, 731 (Ind. Ct. App. 1998)). Absent proof that the records are

6

regularly made, the proponent of the business records has not laid a proper foundation under Rule 803(6), and the records are inadmissible. *Ground*, 702 N.E.2d at 731.

The public-records exception exempts the following from the hearsay rule:

**(8) Public Records.**
(A) A record or statement of a public office if:
(i) it sets out:
(a) the office's regularly conducted and regularly recorded activities;
(b) a matter observed while under a legal duty to [observe and] report; or
(c) factual findings from a legally authorized investigation; and
(ii) neither the source of information nor other circumstances indicate a lack of trustworthiness.
(B) Notwithstanding subparagraph (A), the following are not excepted from the hearsay rule:
(i) investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case;
(ii) investigative reports prepared by or for a public office, when offered by it in a case in which it is a party;
(iii) factual findings offered by the government in a criminal case; and
(iv) factual findings resulting from a special investigation of a particular complaint, case, or incident, except when offered by an accused in a criminal case.

Notably, Rule 803(8) does not contain several of the foundational requirements for business records found in Rule 803(6).

Here, there was no evidentiary foundation laid; thus, we cannot determine whether either exception applies. Yet we need not decide whether the trial court erred in admitting Supervisor Rouns' testimony. Even if it did, her testimony was cumulative of other evidence, making any error a harmless one. That is, Supervisor Rouns testified that Father failed to comply with the trial court's order to participate in services

7

recommended by the family-functioning assessment and had not exercised any parenting time with D.B.M. throughout the case. She also testified that D.B.M. was thriving in his foster-care placement. ACDCS presented the same evidence—and more—through the testimony of FCM Norris and GAL Webber. As a result, any error in this context was harmless.

## II. Termination of Parental Rights

"The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citations omitted). The parent-child relationship is one of our culture's most valued relationships. *Id.* (citation omitted). "And a parent's interest in the upbringing of their child is 'perhaps the oldest of the fundamental liberty interests recognized by the courts.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). But parental rights are not absolute—"children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships." *Id.* (citations omitted). Thus, a parent's interests must be subordinated to a child's interests when considering a termination petition. *Id.* (citation omitted). A parent's rights may be terminated if the parent is unable or unwilling to meet their parental responsibilities by failing to provide for the child's immediate and long-term needs. *Id.* (citations omitted).

When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Id.* at 1229 (citation omitted). Instead, we consider only the evidence and reasonable inferences that support the judgment. *Id.*

(citation omitted). "Where a trial court has entered findings of fact and conclusions of law, we will not set aside the trial court's findings or judgment unless clearly erroneous." *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, "we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment." *Id.* (citation omitted).

A petition to terminate parental rights must allege:

(A) that one (1) of the following is true:

   (i)   The child has been removed from the parent for at least six (6) months under a dispositional decree.

   (ii)  A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

   (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

   (i)   There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

   (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

9

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). "DCS must prove the alleged circumstances by clear and convincing evidence." *K.T.K.*, 989 N.E.2d at 1231 (citation omitted). On appeal, Father challenges the sufficiency of the evidence supporting the trial court's judgment as to subsection (B) of the termination statute. *See* Appellant's Br. p. 11.

Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, ACDCS was required to establish, by clear and convincing evidence, only one of the three requirements of subsection (B). Because we find it to be dispositive, we discuss only whether there was a reasonable probability that the conditions resulting in D.B.M.'s removal or the reasons for his placement outside Father's home would be remedied.

In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014) (citation omitted). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* (quotation omitted). The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing any recent improvements against "habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation." *Id.*

(citations omitted). In so doing, trial courts have discretion to "weigh a parent's prior history more heavily than efforts made only shortly before termination," and courts may find "that parents' past behavior is the best predictor of their future behavior." *Id.*

Here, the trial court concluded that there was a reasonable probability that the conditions resulting in D.B.M.'s removal from Father's care or placement outside his home would not be remedied. As the court explained:

> [Father's] whereabouts are currently unknown. He completed a Family Functioning Assessment, but did not comply with the recommendations. The child has been removed from the home for fifteen months and [Father] has not had any contact with the child, has not paid child support, or otherwise provided for the necessities of a suitable home for the raising of the child.

> The court finds that [Father's] lack of involvement in the child's life and failure to provide materially or financially for the child's well-being which condition existed at the time of the initiation of the CHINS proceedings in the underlying CHINS cause continued to exist at the time of the termination hearing. [Father] has wholly failed to provide the child with the basic necessities of a suitable home. The reasons for the placement of the child outside the parents' home have not been remedied.

Appellant's App. p. 11.

The evidence presented at the termination hearings supports the trial court's findings. FCM Norris and GAL Webber testified that Father did not comply with the court's order to participate in services recommended by the family-functioning assessment and had not exercised any parenting time with D.B.M. throughout the case. Additionally, GAL Webber testified that Father—who did not attend the termination hearing—had "basically fallen off the face of the earth and we haven't always known where he has been." Tr. p. 61. GAL Webber and FCM Norris also stated that Father had no relationship with D.B.M. *Id.* at 55, 61.

Based on the foregoing, we conclude that the evidence supports the trial court's determination that there was a reasonable probability that the conditions resulting in D.B.M.'s removal or the reasons for his placement outside Father's home would not be remedied.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.