## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 16 2020, 5:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Danielle Sheff
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:

B.W., S.B. and L.W. (Minor Children)

And

T.W. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

January 16, 2020

Court of Appeals Case No.
19A-JC-1750

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Marcia J. Ferree, Magistrate

Trial Court Cause Nos.
49D09-1901-JC-185, 49D09-1901-JC-186, and 49D09-1901-JC-187

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, T.W. (Mother), appeals the trial court's Order adjudicating her minor children, B.W., S.B., and L.W. (collectively, Children), to be children in need of services (CHINS).

We affirm.

# ISSUES

Mother presents three issues on appeal, which we restate as:

(1) Whether the trial court abused its discretion when it admitted testimony alluding to results of a drug screen when the drug screen results were not admitted into evidence;

(2) Whether the trial court's findings and conclusions determining Children to be CHINS were supported by the evidence; and

(3) Whether the trial court abused its discretion when it ordered Mother to participate in services as part of its disposition.

# FACTS AND PROCEDURAL HISTORY

Mother has three children, B.W., born on February 13, 2013, S.B., born on October 15, 2016, and L.W., born on November 15, 2018.[1] Mother has a history of heroin abuse, and Mother admitted using heroin while she was

---

[1] B.Y., who is the father of B.W., and M.B., who is the father of S.B., do not participate in this appeal. L.W.'s father is not identified in the record.

pregnant with L.W. Mother underwent treatment for her substance abuse in October 2018 and was discharged from treatment into prenatal care at the hospital where she gave birth. L.W.'s meconium tested positive for opiates, amphetamines, and buprenorphine. On December 14, 2018, Mother entered into an informal adjustment with the Department of Child Services (DCS). Pursuant to that adjustment, Mother agreed to participate in Intensive Out-Patient substance abuse treatment (IOP). Mother did not undergo this treatment.

[5] In January 2019, DCS Family Case Manager Christina Vance (FCM Vance) received a report that Mother was homeless and abusing substances. On January 16, 2019, FCM Vance went to Mother's most recent home and interviewed Mother in order to assess Children's safety and the risk of neglect to Children. FCM Vance noted that Mother appeared to be nervous and uneasy about the presence of a DCS worker in her home. Mother reported that she had been living in her current residence for a couple of weeks. Mother was drug tested that day. As part of her assessment, FCM Vance also spoke to S.B.'s father, M.B., who admitted that he and Mother had abused drugs together in the past. M.B. related that he knew Mother's characteristics and mannerisms when she was abusing drugs and that he had noticed that she was engaging in those habits recently, leading him to believe that she was abusing drugs. After completing her assessment, FCM Vance removed Children from Mother's care.

[6] On January 18, 2019, DCS filed a petition alleging that Children were CHINS because Mother had failed to provide them with a stable and appropriate living

environment free from substance abuse, Mother's substance abuse seriously hindered her ability to care for Children, L.W.'s meconium had tested positive for illegal substances, and Mother was not compliant with the terms of her informal adjustment. DCS also alleged that Mother continued "to use illegal drugs, she tested positive for opiates on or about January 16, 2019, and [Mother] was observed to be erratic and jittery." (Appellant's App. Vol. II, p. 91). On January 18, 2019, the trial court held an initial hearing on the CHINS petition. Mother was sworn in and testified that L.W. was conceived after Mother had been raped by an unknown individual. After the initial hearing on the CHINS petition, the trial court entered an order "to provide [Mother] with services in which she is willing to participate prior to adjudication." (Appellant's App. Vol. II, p. 105). The trial court also ordered Mother to submit to random drug screening as a precondition to supervised parenting time, and it ordered Mother to engage in trauma-focused cognitive behavioral therapy.

[7] After the initial hearing, DCS made referrals for Mother for home-based individual therapy to address Mother's issues with domestic violence, substance abuse, and coping with trauma. Mother was assessed for therapy on January 29, 2019. Mother's treatment plan included a weekly meeting with her therapist. Between January 29, 2019, and April 15, 2019, Mother and the therapist met on two occasions. None of the weekly sessions in that time period were cancelled by the therapist. On March 6, 2019, which was one of the two times Mother met with her therapist, Mother signed an attendance

agreement and discussed treatment goals. Mother did not undergo a substance abuse assessment or IOP, both of which were referred by DCS following the filing of the CHINS petition.

[8] Following the CHINS initial hearing, Mother was also referred for home-based case management to address Mother's issues with housing, employment, and substance abuse. Mother's attendance was good initially. Mother reported moving to Greenwood early in April of 2019, but she had not provided a time for her home-based case manager to inspect the new home. Mother had also reported to her home-based case manager that she had accepted work as a telemarketer and as a car re-possessor, but she had yet to provide her case manager with verification of that employment. Mother had complied with the random drug screening when requested. After Mother reported being employed, her case manager agreed to decrease the number of times they met from twice to once per week. Despite that accommodation for Mother's reported employment, Mother's participation in home-based case management decreased "dramatically" after the sessions decreased to once per week. (Transcript Vol. II, p. 25).

[9] On April 15, 2019, the trial court held a fact-finding hearing on the CHINS petition. FCM Vance testified regarding the January 16, 2019, assessment she performed which resulted in Children's removal from Mother's care. FCM Vance testified that the safety assessment resulted in a conclusion that Mother's home was unsafe for Children and that the risk assessment resulted in a conclusion that Children were faced with a high probability of neglect without

DCS's intervention. When asked if the results of the drug screen administered to Mother that day factored into the risk assessment FCM Vance performed, the following exchange occurred:

> [Mother's Counsel]: Objection. [DCS Counsel is] trying to get drug screen results in the backdoor [sic]. If he wants to introduce drug screen results and authenticate them, he can, but short of that he, you know, it's not appropriate under rules of evidence for him to try to sneak results in this way.
>
> The [c]ourt: Response.
>
> [DCS Counsel]: She's entitled to list the things that went into her analysis as to the risk assessment and not even begun [sic] to discuss the contents of the drug screens. Only that there was one taken and there were actions taken because of those results.
>
> The [c]ourt: Overruled. I'll allow her to answer the question as it was asked.

(Tr. Vol. II, pp. 11-12). FCM Vance testified that the results of Mother's January 16, 2019, drug screen had factored into the risk assessment. FCM Vance further testified without objection that DCS substantiated the neglect report on January 16, 2019, "[d]ue to [Mother's] use of illegal substances." (Tr. Vol. II, p. 15). FCM Vance clarified that DCS was concerned with Mother's substance abuse because, if she was under the influence of drugs, there would be no sober caregiver in the home for Children.

[10] By the time of the CHINS fact-finding hearing, Mother had been discharged from her home-based therapy and case management for lack of participation.

Mother had recently moved into the home of a relative. The permanency FCM, Ebony Arnold (FCM Arnold), testified, without objection, that she drug screened Mother on April 10, 2019, and that Mother "indicated that she had taken an over the counter sleep aid and that was what was causing the results to be positive." (Tr. Vol. II, p. 32). FCM Arnold related that DCS had considered a temporary in-home trial visit for Mother at her new home but had rejected that possibility since two other occupants of Mother's new home had substantiated DCS histories.

[11]     On June 19, 2019, the trial court issued its Order declaring Children to be CHINS. The trial court entered the following findings and conclusions:

> 11. Mother entered into an Informal Adjustment with DCS on December 14, 2018. Mother was not compliant with the Informal Adjustment, therefore, DCS filed the Petition on 1/18/2019.
>
> 12. On 1/16/2019, [FCM Vance] was assigned to complete an assessment involving Mother and the Children.
>
> 13. FCM Vance began her assessment by going to [M]other's home where Mother had been living for a couple of weeks. Mother appeared very nervous and uncomfortable with FCM Vance being in the home. On that day, Mother submitted to a drug screen, the results of which factored into the assessment.
>
> 14. FCM Vance conducted a safety assessment and the results came back unsafe for the Children.

15. FCM Vance conducted a risk assessment and the results came back a high probability of future neglect of the Children without DCS intervention.

16. FCM Vance also spoke with [M.B.,] and he stated that he wanted his child in his care. He further explained that he and Mother used to do drugs together and the [sic] he was aware of her behaviors and demeanor when she was using drugs and that she recently started to exhibit those behaviors.

17. At the conclusion of the assessment, DCS recommended removal and placement of the [C]hildren in foster care.

* * * *

21. Mother only met with [her home-based therapist] on 1/29/19 and 3/6/19, and as a result, she was unsuccessfully discharged from his home[-]based therapy service.

* * * *

24. Initially, Mother was meeting with [her home-based case manager] regularly and complying with random drug screens. However, recently she has not been complying with his services and [home-based case] management services were closed unsuccessfully.

25. On 4/10/2019, Mother attended a child and family team meeting and submitted to an instant drug screen on that day. Mother told FCM Arnold that she took an over-the-counter sleep aid and it caused her screen results to be positive for a drug.

* * * *

31. FCM Arnold started the process of checking the appropriateness of Mother's current residence and learned that a relative member of the household has substantiated [DCS] history.

* * * *

34. The Children's physical or mental condition is seriously impaired or endangered as a result of [Mother's] inability and neglect to provide the [C]hildren with a safe, stable and appropriate home environment.

35. The Children need a safe and stable home environment that includes a sober caregiver and they are unlikely to receive it without the coercive intervention of the [c]ourt.

36. The intervention of the [c]ourt is required to ensure the Children's safety and well-being.

(Appellant's App. Vol. II, pp. 176-78).

[12] On June 28, 2019, DCS filed a pre-dispositional report with the trial court that recommended continued placement for Children outside of Mother's care with a permanency plan of reunification. On July 1, 2019, the trial court held the dispositional hearing. DCS recommended that Mother undergo a substance abuse assessment, random drug screens, home-based therapy, a parenting assessment, and home-based casework to address housing instability and unemployment. Apart from the home-based casework to address Mother's housing, Mother objected to these services. As part of its response to Mother's objection, DCS represented to the trial court that it had received reports from

Mother's parenting time supervisor that Mother was not bonded to L.W. and that Mother's parenting time with Children was chaotic. The parenting time supervisor recommended that Mother undergo a parenting assessment and follow up on its recommendations. The trial court found that the services requested by DCS were rationally related to the reasons for the CHINS and ordered Mother to complete and follow up on the recommendations of a parenting assessment, home-based therapy, home-based case management, a substance abuse assessment, and random drug screens.

Mother now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Admission of Evidence*

Mother's first challenge to the trial court's Order is that it improperly admitted certain evidence at the CHINS fact-finding hearing. We review a trial court's admission of evidence for an abuse of discretion. *In re Des. B.*, 2 N.E.3d 828, 834 (Ind. Ct. App. 2014). An abuse of the trial court's discretion occurs if its decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

Mother argues that the trial court committed reversible error when it allowed FCM Vance to testify that the results of Mother's drug screen on January 16, 2019, factored into her assessment that resulted in Children being removed from Mother's care. Citing Indiana Evidence Rules 901 and 803, Mother claims that DCS was impermissibly allowed to refer to the results of the drug

screen without having the results themselves admitted. In addressing Mother's argument, we begin by noting that Evidence Rule 901 pertaining to authentication of an item of evidence and Evidence Rule 803 providing the business record exception to the hearsay rule are irrelevant to this case because DCS did not attempt to admit the drug screen results themselves into evidence. Therefore, there was no opportunity for DCS to run afoul of those evidentiary rules. We also note that Mother did not object at the fact-finding hearing on the due process grounds she claims as error on appeal. As a general rule, a failure to raise a specific objection at the CHINS fact-finding hearing waives the issue for appeal, and a party may not object on one ground at trial and raise a new ground on appeal. *In re Des. B.*, 2 N.E.3d at 834. By failing to raise the specific due process objection at trial that she now raises on appeal, we conclude that Mother has waived her claim.

[16] However, even if Mother's claims were properly before us and well-taken, we would not reverse the trial court's Order in this case. Assuming, without deciding, that the challenged evidence was erroneously admitted, the mere fact that evidence was erroneously admitted does not automatically require reversal; rather, we will only reverse if we conclude the admission affected a party's substantial rights. *D.B.M. v. Ind. Dep't of Child Servs.*, 20 N.E.3d 174, 179 (Ind. Ct. App. 2014), *trans. denied*.

[17] Here, the trial court found that Children were removed from Mother's care on January 16, 2019, following FCM Vance's safety and risk assessments, and that "Mother submitted to a drug screen, the results of which factored into the

assessment." (Appellant's App. Vol. II, p. 177). Apart from the challenged testimony, FCM Vance also testified at the fact-finding hearing, without objection from Mother, that at the end of her assessment, FCM completed a report substantiating neglect by Mother "[d]ue to [Mother's] use of illegal substances." (Tr. Vol. II, p. 15). We find that the challenged testimony was harmless in light of this unchallenged testimony that Children were removed from Mother's care because DCS substantiated her drug use on January 16, 2019. In addition, the trial court found that M.B. recently had observed Mother exhibiting the indicia of drug intoxication, which was additional evidence that Mother was abusing substances while Children were in her care. As such, even if the challenged testimony was improperly admitted, we cannot conclude that Mother's substantial rights were affected or that reversal is required. *Id.*

## II. *Sufficiency of the Evidence*

[18] Mother next challenges the evidence supporting the trial court's determination that Children are CHINS. More specifically, Mother argues that the evidence did not show that Children were seriously endangered by Mother or that the court's coercive intervention was necessary to meet Children's needs.

## A. *Standard of Review and Statutory Requirements*

[19] The appellate courts generally accord latitude and deference to trial courts in family law matters. *Matter of E.K.*, 83 N.E.3d 1256, 1260 (Ind. Ct. App. 2017), *trans. denied*. Our standard of review of a trial court's CHINS determination is well-settled: we do not reweigh the evidence or judge witness credibility. *In re S.D.*, 2 N.E.3d 1283, 1286 (Ind. 2014). We consider only the evidence which

supports the trial court's decision and the reasonable inferences to be drawn from that evidence. *Id.* at 1287. In addition, where, as here, the trial court has entered findings of fact and conclusions of law, we exercise a two-tiered review. *Matter of K.P.G.*, 99 N.E.3d 677, 681 (Ind. Ct. App. 2018), *trans. denied*. First, we consider whether the evidence supports the findings, and, second, we determine whether the findings support the judgment. *Id.* We will reverse a trial court's CHINS determination only if it is clearly erroneous and a review of the record leaves us firmly convinced that a mistake was made. *Id.* at 681-82. A CHINS determination is clearly erroneous "if the record facts do not support the findings or if it applies the wrong legal standard to properly found facts." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997) (internal quotation marks omitted).

[20] DCS sought to have Children adjudicated CHINS under Indiana Code section 31-34-1-1,[2] which provides as follows:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the

---

[2] DCS also alleged that L.W. was a CHINS pursuant to I.C. § 31-34-1-10 due to having tested positive for illegal substances at birth. The trial court found that L.W. had tested positive for illegal substances at birth. Mother does not contest that finding on appeal.

child with necessary food, clothing, shelter, medical care, education, or supervision . . . and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

[21] Thus, an adjudication under this section "requires three basic elements: that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *In re S.D.*, 2 N.E.3d at 1287. DCS was required to prove that Children were CHINS by a preponderance of the evidence. *See* I.C. § 31-34-12-3. In rendering a CHINS determination, the trial court considers the family's condition not just when the petition was filed, but also when the petition is heard. *In re S.D.*, 2 N.E.3d at 1290.

## B. *Endangerment*

[22] The trial court concluded that "Children's physical or mental condition is seriously impaired or endangered as a result of [Mother's] inability and neglect to provide [Children] with a safe, stable and appropriate home environment[]" and that "Children need a safe and stable home environment that includes a sober caregiver[.]" (Appellant's App. Vol. II, p. 178). The evidence showed that Mother was an admitted heroin abuser whose drug use resulted in L.W. testing positive for illegal substances at birth. In December 2018, Mother

entered into an informal adjustment with DCS to address her substance abuse through IOP. Mother was not compliant with the informal adjustment. On January 16, 2019, FCM Vance substantiated Mother's continued use of illegal substances and assessed that Children were unsafe and at a high risk for neglect. After the CHINS petition was filed, Mother was referred to individual therapy and home-based case management designed to maintain her sobriety. Mother was discharged from both of those services for lack of participation. Mother did not complete the substance abuse assessment or the IOP referred to her after the initiation of the CHINS proceedings. Although Mother had submitted a number of negative drug screens after being ordered to undergo random testing, Mother failed a drug screen less than one week prior to the CHINS fact-finding hearing. This evidence supported a reasonable inference that Mother had failed to address her substance abuse by the time of the fact-finding hearing and that this failure deprived Children of a sober caregiver.

[23] In addition, although Mother had reported procuring two jobs, she had not provided any confirmation of her employment to her home-based caseworker. The trial court was under no obligation to believe Mother's claim that she was employed, and this evidence supports an inference that Mother was not actually employed by the time of the fact-finding hearing. Mother also had been discharged unsuccessfully from the home-based case management, the goal of which was to assist her in maintaining housing for herself and Children, and, at the time of the fact-finding hearing, Mother was living with a relative who had a substantiated DCS history. This evidence showed that Mother did not have

stable employment or appropriate housing to provide for Children's needs. We conclude that the evidence, as embodied by the trial court's findings, indicated that Children, the oldest of whom was a six-year-old and the youngest of whom was a five-month-old baby, continued to be endangered by Mother's unaddressed substance abuse, employment instability, and lack of appropriate housing. Therefore, the trial court's determination was not clearly erroneous. *See Yanoff*, 688 N.E.2d at 1262.

[24] Mother argues that the trial court's determination regarding endangerment was unsupported by the evidence because she was compliant with random drug screens, there was evidence in the record that DCS would have allowed her a trial temporary home visit if she were not living with someone with a DCS history, and she had reported having employment. However, these arguments are unpersuasive because they entail consideration of evidence that does not support the trial court's determination, which is contrary to our standard of review. *See In re S.D.*, 2 N.E.3d at 1287. Mother also argues that "absent evidence regarding [Children's] unmet needs, DCS wholly failed to present a nexus between any evidence and potential harm to [Children]." (Appellant's Br. pp. 37-38). However, the CHINS statute does not require DCS or a trial court to wait until a child is physically or emotionally harmed in order to intervene; rather, a child is a CHINS if his or her physical or mental condition is endangered by parental action or inaction. *In re R.P.*, 949 N.E.2d 395, 401 (Ind. Ct. App. 2011). Because the evidence supported the trial court's findings

and conclusions, we find no clear error in the trial court's determination that Children were endangered by Mother. *See Matter of K.P.G.*, 99 N.E.3d at 681.

### C. *Coercive Intervention*

[25] Mother also challenges the evidence supporting the trial court's conclusion that Children required the coercive intervention of the court in order to have their needs met. The purpose of a CHINS proceeding is to determine whether a child's circumstances require services that are unlikely to be provided without the intervention of the court. *Matter of E.Y.*, 126 N.E.3d 872, 877 (Ind. Ct. App. 2019). Therefore, the focus of a CHINS inquiry is on the condition of the child, not on the culpability of the parents. *Id.* Requiring that DCS show that a child's needs are unlikely to be met without the intervention of the court "guards against unwarranted State interference in family life, reserving that intrusion for families 'where parents lack the *ability* to provide for their children,' not merely where they 'encounter *difficulty* in meeting a child's needs.'" *In re S.D.*, 2 N.E.3d at 1287 (quoting *Lake Cnty. Div. of Family & Children Servs. v. Charlton*, 631 N.E.2d 526, 528 (Ind. Ct. App. 1994) (emphasis in original). Indeed, the purpose of a CHINS adjudication is to "protect children, not punish parents." *Id.* at 1285.

[26] Here, DCS first became involved with this family when L.W. tested positive for illegal substances at her birth and Mother admitted that she had used heroin. In December of 2018, Mother entered into an informal adjustment with DCS and agreed to enter IOP in an effort to avoid having Children be declared CHINS. Mother did not engage in IOP. Next, DCS substantiated Mother's drug use on

January 16, 2019, and removed Children from her care. As part of the ensuing CHINS proceedings, Mother was referred to individual therapy to address her substance abuse and trauma. Mother was also referred to home-based case management to assist her in maintaining her sobriety and appropriate housing. Despite signing an attendance agreement with her therapist on March 6, 2019, Mother was discharged from that service due to lack of participation. Mother was also discharged from her other home-based services for lack of engagement. By the time of the fact-finding hearing, Mother had recently tested positive for an illegal substance, she had not provided verification of her employment to DCS, and she was living in a home that was inappropriate for Children because a roommate had a substantiated DCS history. We conclude that evidence that Mother was non-compliant with services and continued to struggle with employment and housing supported the trial court's determination that Children required the intervention of the court in order to have their needs for a sober caregiver and a safe, stable home environment met.

[27] Mother contends otherwise, arguing that she was sober because she was compliant with her random drug screens, her non-compliance with therapy was not significant because she had no mental health concerns, and there was no evidence that she would not correct her housing issues without court intervention. However, the evidence showed that, while Mother initially participated consistently in her home-based case management and drug screens, her participation had dropped off "dramatically" after she reported employment, she was discharged from home-based case management for

nonattendance even after services were altered to accommodate her reported employment, and she had a positive drug screen less than one week before the fact-finding hearing. (Tr. Vol. II, p. 25). The evidence also showed that at the initial hearing on the CHINS petition, Mother reported being raped and that she discussed treating her trauma with her therapist as a goal of her individual therapy. In addition, Mother was discharged unsuccessfully from the services offered to her to assist her in procuring and maintaining appropriate housing and she had been unable to do so on her own. Accordingly, we cannot say that the trial court's conclusion that coercive intervention was necessary was clearly erroneous or that we are convinced that a mistake was made. *See Matter of K.P.G.*, 99 N.E.3d at 681.

### III. *Dispositional Order*

Mother also challenges the trial court's Dispositional Order requiring that she participate in home-based therapy, home-based case management,[3] a substance abuse assessment, random drug screens, and a parenting assessment and to follow up on all treatment recommendations. Following a CHINS determination and a dispositional hearing, the trial court issues its dispositional order detailing the plan of care, treatment, or rehabilitation required to address the CHINS' needs. I.C. § 31-34-19-10. As part of its dispositional order, the

---

[3] The trial court ordered home-based case management to address employment and housing. Mother does not challenge the imposition of home-based case management to assist her with housing.

trial court is required to enter findings and conclusions pertaining to a parent's need to participate in the plan of care of the CHINS. I.C. § 31-34-19-10(2). The CHINS statute provides that a trial court that has determined that a parent should participate in a program of care, treatment, or rehabilitation for the child may order the parent to do the following:

(1) Obtain assistance in fulfilling the obligations as a parent [].

(2) Provide specified care, treatment, or supervision for the child.

(3) Work with a person providing care, treatment, or rehabilitation for the child.

(4) Participate in a program operated by or through the department of correction.

(5) Participate in a mental health or addiction treatment program.

I.C. § 31-34-20-3. "Although the juvenile court has broad discretion in determining what programs and services in which a parent is required to participate, the requirements must relate to some behavior or circumstance that was revealed by the evidence." *In re A.C.*, 905 N.E.2d 456, 464 (Ind. Ct. App. 2009). This court has recognized that forcing unnecessary requirements on parents whose children have been determined to be CHINS could set them up for failure, resulting in failure of reunification of the family and possibly the termination of parental rights. *Id*. at 464-65.

[29] The gravamen of Mother's argument is that the need for the ordered services was not supported by evidence in the record and that because she works "two or three jobs," the requirements of the ordered services have set her up for failure. (Appellant's Br. p. 39). Home-based therapy, home-based case management, a substance abuse assessment, and random drug screens were previously referred for Mother to address her substance abuse. Mother was an admitted heroin abuser who had not yet undergone a substance abuse assessment, had her referrals for home-based therapy and home-based case management closed for lack of participation, and had failed a random drug screen as recently as April 5, 2019, less than a week before the CHINS fact-finding hearing. At the July 1, 2019, dispositional hearing, no new evidence pertaining to Mother's sobriety was admitted.

[30] Mother had also reported being raped, resulting in the birth of L.W. Home-based therapy had been referred to assist Mother in coping with her trauma, but Mother had not engaged in therapy through the CHINS proceedings. Home-based case management had also been referred for Mother in order to address her employment. Mother's employment had not been confirmed by the time of the fact-finding hearing, and the pre-dispositional report revealed that Mother still was not reporting any income as of June 27, 2019. In addition, at the dispositional hearing, Mother's counsel argued that a parenting-time assessment would be appropriate if a service provider recommended it. DCS represented to the trial court that the parenting-time supervisor was recommending a parenting

assessment due to observing "chaotic" parenting time and a lack of bonding between Mother and L.W. (Tr. Vol. II, p. 47).

[31] In light of this evidence, we conclude that a rational basis existed in the record for ordering these services for Mother to assist her in procuring and maintaining her sobriety, her mental health, employment, and parenting skills, all of which continued to be issues up to the dispositional hearing. We find Mother's argument that her employment makes the services ordered too onerous to be unpersuasive for several reasons. Mother never actually established that she was employed, and there is no evidence in the record regarding what the circumstances of her reported employment were. In addition, when Mother reported being employed during the CHINS proceedings, DCS showed a willingness to accommodate her by decreasing the time requirements of services and meeting her where she was to eliminate additional travel time for her. On the record before us, we cannot conclude that the services ordered were unduly burdensome on Mother, so we affirm the trial court's Dispositional Order.

## CONCLUSION

[32] Based on the foregoing, we conclude that any error in the admission of the challenged testimony was harmless, sufficient evidence supported the trial court's determination that Children are CHINS, and that the trial court did not abuse its discretion when it ordered Mother to participate in services.

[33] Affirmed.

[34] Baker, J. and Brown, J. concur