


FILED

Sep 04 2024, 9:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Court of Appeals of Indiana

In the Matter of: A.B. and R.B. (Minor Children),

*Children in Need of Services*

and

K.C. (Mother) and C.B. (Father),

*Appellants-Respondents*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

---

September 4, 2024

Court of Appeals Case No.
24A-JC-70

Appeal from the Madison Circuit Court

The Honorable Stephen J. Koester, Judge

The Honorable Jason P. Jamerson, Juvenile Referee

**Opinion by Judge Mathias**
Chief Judge Altice and Judge Bailey concur.

**Mathias, Judge.**

[1] K.C. ("Mother") and C.B. ("Father") appeal the trial court's order adjudicating their two children as Children in Need of Services ("CHINS"). They raise three issues, which we restate as:

> I. Whether the trial court lacked the authority to sua sponte issue protective orders between the parents;
>
> II. Whether the trial court abused its discretion when it admitted a police officer's testimony at the factfinding hearing; and,
>
> III. Whether the CHINS adjudication is supported by a preponderance of the evidence.

[2] We affirm the CHINS adjudication, but we reverse in part and remand with instructions for the court to vacate the protective orders.

## Facts and Procedural History

[3] Mother and Father, who are not married, have two children: A.B., born in June 2016, and R.B., born in April 2018. On January 3, 2023, Mother requested a protective order against Father in case number 48C04-2301-PO-3. The trial

court issued a protective order with a two-year term after finding that Father represented a credible threat to Mother's safety.

[4] On April 16, 2023, Mother called the police and reported that Father had struck her in the face and attempted to choke her. A few days later, DCS investigated a report of domestic violence in Mother's home and that Father had also violated the protective order by his presence in Mother's home.[1] Specifically, DCS received information that Father committed domestic violence against Mother while the children were playing in a bathtub. When the family case manager interviewed Mother, she observed an abrasion on Mother's lip. A few days after DCS began its investigation, the trial court dismissed the protective order at Mother's request.

[5] On April 28, DCS filed a petition alleging that seven-year-old A.B. and five-year-old R.B. were CHINS. The children remained in Mother's care.

[6] The trial court held an initial hearing on May 15, but Parents did not appear. The court later learned that Parents' notice of the hearing was deficient because the address of the hearing location was incorrect. Nonetheless, during the May 15 hearing, the court ordered the children detained, and DCS placed the children with their great-grandmother that day. Father was also arrested on May 15 for the April 16 domestic incident. And the court sua sponte issued

---

[1] Father had a prior Class A misdemeanor domestic battery conviction and Mother was the victim of that offense. Father pleaded guilty in 2016 and completed his probation in June 2017.

protective orders between Mother and Father. *See* Appellants' App. pp. 71-78. In doing so, the court named each parent as the petitioner against the other parent, even though neither parent had sought such protective orders. *Id.*

[7] After the trial court learned that Parents were not given the correct address for the May 15 hearing, the court held another hearing the next day. Parents were present at that hearing. Father appeared remotely from jail. Both Parents objected to the entry of the protective orders at the hearing, but the court kept the orders in place. The trial court agreed to return the children to Mother's care but only after she agreed to comply with the protective order. The court appointed counsel for Mother, but Father indicated that he would have the funds to hire private counsel.

[8] In July, the State moved to dismiss Father's pending criminal charges in case number 48C04-2305-F5-1317, and the trial court granted that motion.[2] Ex. Vol. pp. 25-26. Pursuant to Indiana Code section 35-38-9-1(b)(1), the court issued an order for pending expungement because the criminal charges against Father had been dismissed. Ex. Vol. p. 30.

[9] The trial court held the CHINS fact-finding hearing on September 18 and November 11. Over Parents' objection, the court allowed Chesterfield Police Officer Derek Wyatt to testify to his observations when he responded to the

---

[2] The criminal court also issued an order vacating the No Contact Orders that had been issued in the criminal case between Father and Mother and the children. Ex. Vol. pp. 26-27.

April 16 report of domestic violence between Parents. The officer stated that when he arrived at Mother's home, she was crying and had "a busted lip that was bleeding." Tr. p. 11. Mother reported to the officer that she and Father had fought, Father hit her in the mouth, and he tried to choke her. *Id*. When the officer spoke to Father, he denied Mother's allegations.

[10] DCS presented evidence that, a few days after the incident, family case manager Jessica Milliner spoke to Mother at her home. Mother had an "abrasion on her upper lip." *Id*. at 18. Mother stated that she did not know how she had injured her lip and that Father had not hit her. *Id*. at 19. Milliner spoke to Father over the phone, and he denied that he had been involved in a physical altercation with Mother. *Id*. at 20.

[11] The family case manager testified that Parents did not know how to properly communicate in their children's presence. *Id*. at 54. She expressed concern that the children would suffer the effects of the "cycle of abuse" and would be more likely to be involved in abusive relationships in the future. *Id*. The family case manager believed that services were necessary so that Parents could learn how to provide a healthy environment for the children.

[12] On December 27, the trial court issued the dispositional order. The court ordered Parents to participate in services which included their active participation and successful completion of domestic violence assessments and programs. And the court ordered Father to participate in "Father Engagement Services to include a curriculum on domestic violence." Appellants' App. p. 23.

The trial court also modified the No Contact Order "to allow the parents to communicate in regards to the children but that they are not to be around each other." *Id*.

[13] Parents now jointly appeal.

## Protective Order Issued in the CHINS Proceeding

[14] Parents claim that the trial court violated their due process rights when the court sua sponte entered orders for protection under the Indiana Civil Protection Order Act ("CPOA"). We agree with the Parents that the trial court lacked authority to sua sponte issue the protective orders.[3] Appellants' Br. at 12-13.

[15] The CPOA governs orders for protection and was created to ensure the safety and protection of domestic violence victims and to prevent future domestic violence. Ind. Code § 34-26-5-1, *et seq*. But the plain language of the CPOA allows a trial court to grant orders for protection only after a petition has been filed. *See* Ind. Code § 34-26-5-2, -9. The CPOA does not contain any language granting trial courts authority to issue protective orders sua sponte.[4]

---

[3] The State argues that Parents have waived these claims, but we disagree. The court sua sponte issued the orders in Parents' absence. Parents objected to the orders at their first opportunity, the May 16 initial hearing.

[4] We also observe that, when a petitioner requests dismissal of an order of protection, "the court shall without delay or any conditions dismiss the case without prejudice." *See* Ind. Code § 34-26-5-12.

[16]   Moreover, while the statutes concerning CHINS actions allow the court to issue orders sua sponte in certain circumstances, there is no statutory language permitting the court to sua sponte issue protective orders between parents. For example, courts adjudicating CHINS petitions may "[o]rder a person who is a party to refrain from direct or indirect contact **with the child**."[5] Ind. Code § 31-34-20-1(a)(7) (emphasis added). The court may also "[o]rder a perpetrator of child abuse or neglect to refrain from returning to the child's residence." *Id.* at (a)(8). And courts have authority to "issue an order . . . to control the conduct of any person **in relation to the child**." I.C. § 31-32-13-1 (emphasis added).

[17]   The State does not direct us to any statute granting the trial court authority to issue sua sponte protective orders under the CPOA. And we have reviewed the CPOA and conclude that the trial court lacked authority to sua sponte issue protective orders between Mother and Father. For this reason, we remand this case with instructions to vacate the protective orders issued on May 15, 2023.[6]

[18]   We now turn our attention to Parents' arguments concerning the CHINS adjudication.

---

[5] A DCS attorney, guardian ad litem, or court appointed special advocate may also petition the juvenile court to request a no contact order between a child and any person. Ind. Code § 31-34-25-1.

[6] At the May 15 hearing, the trial court created documents that made it appear as if Mother and Father had each petitioned for protective orders against each other. The court also issued findings in each order for protection, even though no party was present or had presented evidence, stating that "Petitioner was present at the hearing and the Respondent was not present." Appellants' App. pp. 72, 76. The court also "found" that "Respondent had notice and an opportunity to be heard." *Id.* The findings are clearly unsupported by the record because neither parent was present at the May 15 hearing through no fault of their own and neither parent petitioned for an order for protection.

## Admission of Officer Wyatt's Testimony

[19] During the fact-finding hearing, and over Parents' objection, the trial court admitted Officer Wyatt's testimony about the April 2023 domestic violence report. Parents argued the testimony was inadmissible because the charges for that incident were dismissed and expunged. Tr. pp. 6-7. On appeal, Parents claim the trial court abused its discretion when it admitted the officer's testimony.

[20] The admission of evidence is entrusted to the discretion of the trial court. *D.B.M. v. Ind. Dep't of Child Servs.*, 20 N.E.3d 174, 179 (Ind. Ct. App. 2014), *trans. denied*. Evidentiary rulings of a trial court are afforded great deference on appeal and are overturned only upon a showing of an abuse of discretion. *In re Des.B.*, 2 N.E.3d 828, 834 (Ind. Ct. App. 2014). We will reverse the trial court's decision regarding the admission of evidence only when the decision is against the logic and effect of the facts and circumstances before the court. *In re L.T.*, 145 N.E.3d 864, 868 (Ind. Ct. App. 2020).

[21] After the trial court dismissed Father's criminal charges, the records were properly expunged pursuant to Indiana Code section 35-38-9-1. In relevant part, the expungement statute's purpose is to allow an individual who satisfies certain criteria to escape the stigma associated with an arrest that does not result in a conviction. *B.S. v. State*, 95 N.E.3d 177, 180 (Ind. Ct. App. 2018). The statute speaks only to the expungement of records, not the facts underlying the charged offense. *Cf. Whaley v. Medical Licensing Bd. of Ind.*, 184 N.E.3d 721, 725

n.2 (Ind. Ct. App. 2022) (observing that Indiana Code section 35-38-9-10, the "anti-discrimination statute" only pertains to consideration of an expunged conviction . . . and not "to consideration of the facts underlying the conviction . . . .").

[22] There is no language in the authority cited by Parents addressing the admissibility of the underlying facts of expunged records of charges or convictions. And we are not persuaded by Parents' argument that the trial court should not have admitted Officer Wyatt's testimony concerning the facts underlying the expunged charges, particularly where those facts led to the DCS involvement in this case. We therefore conclude that the trial court did not abuse its discretion when it admitted Officer Wyatt's testimony.

## Sufficient Evidence to Support the CHINS Adjudication

[23] The purpose of a CHINS adjudication is to "protect children, not punish parents." *In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010). The proceeding thus focuses on "the best interests of the child, rather than guilt or innocence as in a criminal proceeding." *Id.* Trial court judges are often faced with the challenge of balancing multiple factors and multiple voices in a CHINS case. At the fact-finding hearing, the sole issue before the court is whether the child is a CHINS based upon the criteria in the CHINS statutes. *T.Y.T. v. Allen County Div. of Family & Children*, 714 N.E.2d 752, 756 (Ind. Ct. App. 1999).

[24] In this case, DCS had to establish by a preponderance of the evidence that (1) the children were under eighteen; (2) that the children were CHINS under

Indiana Code section 31-34-1-1 because "the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision"; and (3) the care, treatment, or rehabilitation needed to address those circumstances is unlikely to be provided or accepted without coercive intervention of the court. *See In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012); Appellants' App. pp. 66-67. On review, we neither reweigh the evidence nor judge the credibility of the witnesses and will consider only the evidence and reasonable inferences that support the trial court's decision. *In re K.D.*, 962 N.E.2d at 1253.

[25] Parents argue that DCS failed to prove that they are unlikely to meet their children's needs absent court intervention. Appellants' Br. at 10. In support of their argument, Parents allege that DCS did not present evidence that the children were harmed or endangered, and they point out that the family case manager testified that the children seemed happy. Tr. pp. 23, 57. Parents note that the children were placed in Mother's care, and the court did not order any services for the children. Finally, Parents argue there was no evidence that the children had observed domestic violence or that violence between the Parents had impacted them. Appellant's Br. at 12.

[26] A child's exposure to domestic violence can support a CHINS finding. *In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010); *see also K.B. v. Ind. Dep't of Child Servs.*, 24 N.E.3d 997, 1003-04 (Ind. Ct. App. 2015) (stating that a single incident of

domestic violence in a child's presence may support a CHINS finding). Importantly, the CHINS statute does not require the juvenile court and DCS to wait until a child is physically or emotionally harmed to intervene; rather, a child may be determined to be a CHINS if his or her physical or mental condition is endangered. *In re R.P.*, 949 N.E.2d 395, 401 (Ind. Ct. App. 2011).

[27] DCS presented evidence of a history of domestic violence between Father and Mother, which resulted in Father's conviction for domestic battery in 2016. Unquestionably, children are endangered by domestic violence in their home even when the children do not witness a specific violent incident. The children may not have witnessed Father's violence toward Mother, but they were in the bathtub in the home when the domestic violence occurred.

[28] Moreover, our supreme court has addressed the harm that children suffer when they are exposed to domestic violence between their parents. *See In re E.M.*, 4 N.E.3d 636, 644-45 (Ind. 2014); *see also S.H. v. D.W.*, 139 N.E.3d 214, 216 (Ind. 2020) (acknowledging that domestic violence is "a public-health crisis that harms both the victim and those within the victim's household. Children exposed to domestic violence are more likely to suffer significant psychological and developmental issues."). By failing to provide their children with a home free from domestic violence, Parents have not provided the children with an appropriate, safe home.

[29] We turn now to whether the coercive intervention of the court was necessary. When the police responded to the report of the domestic incident in April 2023,

Mother told the officer that Father hit her in her mouth and tried to choke her. The officer observed that Mother was crying and had "a busted lip that was bleeding." Tr. p. 11. Yet, Mother retracted her statements after DCS became involved and continued to deny that Father had hit her as she initially reported. The pattern of domestic violence between Parents, and Mother's denials that she was the victim of domestic violence, are evidence that the coercive intervention of the court is necessary to ensure that Parents receive counseling and therapy to assist them in providing a safe home for the children free from domestic violence.

[30] For all of these reasons, we conclude that DCS proved by a preponderance of the evidence that the children are CHINS.

## Conclusion

[31] The trial court lacked statutory authority to issue sua sponte protective orders between Parents, and we remand this case to the court with instructions to vacate those orders.

[32] Concerning the CHINS factfinding hearing and adjudication, we conclude that the trial court did not abuse its discretion when it admitted Officer Wyatt's testimony into evidence, and the trial court's order adjudicating the children as CHINS is supported by sufficient evidence.

[33] Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Altice, C.J., and Bailey, J., concur.

ATTORNEY FOR APPELLANTS

Dorothy Ferguson
Anderson, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

David E. Corey
Supervising Deputy Attorney General
Indianapolis, Indiana